FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 26, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>MILIONIS CONSTRUCTION, INC., a Washington corporation; STEPHEN MILIONIS, an individual; and JEFFREY WOOD and ANNA WOOD, husband and wife, and the marital community composed thereof,<br><br>Defendants. | No.   2:17-CV-00341-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE COVERAGE** |

Before the Court, without oral argument, is Plaintiff the Cincinnati Underwriters Insurance Company's ("Cincinnati") Renewed Motion for Partial Summary Judgment Re Coverage, ECF No. 87. Cincinnati seeks a declaration that it has no duty to indemnify Defendant Milionis Construction, Inc. ("Milionis"). Defendants Jeffrey and Anna Wood oppose the motion as individual defendants and as assignees of Milionis and Defendant Stephen Milionis. ECF No. 90. Having reviewed the pleadings and the file in this matter, the Court is fully informed and grants the motion.

ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL
SUMMARY JUDGMENT RE COVERAGE **-** 1

**BACKGROUND**

**A.     Procedural Background**

This case arises from a lawsuit that Jeffrey and Anna Wood filed against Milionis and Stephen Milionis in the Spokane County Superior Court ("the underlying action") on November 18, 2016. The Woods had hired Milionis as the general contractor for the construction of a residential home. ECF No. 89-1 at 54. In the underlying action, the Woods alleged, *inter alia*, that Milionis breached the parties' agreement by leaving the home unfinished.[1] *See generally id.* at 52–66. Milionis's insurer, Cincinnati, defended Milionis under a reservation of rights. *Id.* at 68–75.

Cincinnati then brought the instant action while the underlying action was still pending, seeking a declaratory judgment that it did not have a duty to defend or indemnify Milionis in the underlying action. ECF No. 1. On March 13, 2018, Cincinnati moved for summary judgment on the issue of coverage, i.e., whether it had the duty to defend and indemnify. ECF No. 32. The Court denied the motion, concluding that based on the eight corners of the policy and the complaint in the underlying action, Cincinnati had a duty to defend. ECF No. 63 at 6–7. The Court also found that questions of fact precluded summary judgment on whether

---

[1] On July 20, 2018, the state court entered a stipulated judgment against Milionis for damages "in the principal amount of $1,700,000, plus reasonable attorney fees and costs and interest." ECF No. 89-2 at 3.

ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE COVERAGE **- 2**

Cincinnati had a duty to indemnify. *Id.* at 8. Now that the underlying action has concluded and the parties have engaged in extensive discovery, Cincinnati renews its partial summary judgment motion on the issue of coverage. ECF No. 87.

**B.     Liability Policy**

On November 23, 2014, Cincinnati issued to Milionis a commercial general liability policy, Policy Number CSU0053004. ECF No. 88 at 2. It was effective until November 23, 2016. *Id.* The policy provides Milionis coverage for "sums that [it] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" ECF No. 89-1 at 8. This insurance applies to "bodily injury" or "property damage"[2] only if "caused by an 'occurrence'[3] that takes place in the 'coverage territory.'" *Id.*

**1.     Limitations**

The policy also contains provisions limiting insurance. It specifically excludes insurance for property damage to "that particular part of real property on which [Milionis] or any contractors or subcontractors working . . . on [its] behalf are performing operations, if the 'property damage' arises out of those operations" ("operations exclusion"). *Id.* at 12. It further excludes insurance for property

---

[2] "Property damage" means "physical injury to tangible property, including all resulting loss of use of that property," or "loss of use of tangible property that is not physically injured." ECF No. 89-1 at 23.
[3] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 22.

ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE COVERAGE **-** 3

damage to "that particular part of any property that must be restored, repaired or replaced because '[its] work'[4] was incorrectly performed on it" ("repair exclusion"). *Id.*

The policy also contains an Independent Contractors Limitations of Coverage Endorsement ("ICL"). *Id.* at 25. The ICL requires Milionis, "as a condition to and for coverage to be provided by this policy," to (1) obtain a formal written contract with all independent contractors and subcontractors verifying valid commercial general liability insurance; (2) obtain a formal written contract stating the independent contractors or subcontractors agree "to defend, indemnify and hold [Milionis] harmless from any and all liability, loss, actions, costs;" and (3) verify in the contract that the independent contractors or subcontractors have named Milionis as an additional insured on their general liability policy. *Id.*

The ICL emphasizes that "**this insurance will not apply to any loss, claim or 'suit' for any liability or any damages arising out of operations or completed operations performed for [Milionis] by any independent contractors or subcontractors unless all of the above conditions are met**." *Id.*

---

[4] This means "work or operations performed by [Milionis] or on its behalf." ECF No. 89-1 at 24. It includes any "warranties or representations made with respect to the fitness, quality, durability, performance or use of" Milionis's work and failing to provide instructions. *Id.*

ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE COVERAGE **-** 4

## C. Factual Background

Milionis itself "performed no labor on the subject construction project," ECF No. 92-4 at 4, except excavation, ECF No. 89-2 at 120. It hired subcontractors to do "pretty much everything" else. ECF No. 89-2 at 129.

In its November 28, 2016 reservation-of-rights letter, Cincinnati quoted the ICL and requested that Milionis send it contracts if "any of the work was subcontracted out." ECF No. 89-1 at 75. Again on May 18, 2017, Cincinnati requested copies of Milionis's subcontractor contracts. *Id.* at 78. On October 16, 2017, Cincinnati finally wrote to Milionis:

> It is our understanding that Milionis hired subcontractors to perform work on the Woods' house, but it did not have written contracts for some or all of that work, as is required by the Independent Contractors Restriction. Cincinnati's policy, therefore, does not appear to apply to some or all of the damages claimed in the Woods' lawsuit. Should this understanding be in any way incorrect, please provide . . . copies of all contracts between Milionis and its subcontractors for this project.

*Id.* at 81.

To date, Milionis has not sent Cincinnati any subcontractor contracts or proof of Milionis's additional insured status as required by the ICL. ECF No. 109 at 15.

## LEGAL STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the record

establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of showing that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the trial court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court is to view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United*

*States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

**DISCUSSION**

An insurer's duty to indemnify turns on the "insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash. 2d 55, 64 (2000). In other words, the policy must actually cover the insured's liability. The interpretation of insurance policy language is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash. 2d 477, 480 (1984).

The terms of a policy should be given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Sears v. Grange Ins. Ass'n*, 111 Wash. 2d 636, 638 (1988). "The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." *Am. Star Ins. Co. v. Grice*, 121 Wash. 2d 869, 875 (1993). To determine coverage, the insured must establish that the loss falls within the scope of the policy's insured losses. *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wash. App. 335, 337 (1999). Any ambiguities, particularly with respect to exclusions, are to be strictly construed against the insurer. *Hayden*, 141 Wash. 2d at 64.

While general principles favor the insured because the purpose of insurance is to insure, courts override such principles when an insured purchases a general

liability policy, like the one at issue here, as opposed to performance bonds, product liability insurance, or malpractice insurance. *See, e.g.*, *id.* at 64–65. "Consequently, the type of policy at issue here insures against damage to tangible property of another, not the insured's product." *Aetna Cas. & Sur. Co. v. M & S Indus., Inc.*, 64 Wash. App. 916, 921 (1992).

**A.     Occurrence**

For coverage to apply, there must first have been an "occurrence," which includes continuous or repeated exposure to substantially the same general harmful conditions that caused the loss (i.e., property damage). ECF No. 89-1 at 22. *See Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 429 (2002) ("The starting point is whether there was an 'occurrence.'").

The Woods assert that "among other things, a covered 'occurrence' was Milionis negligently using and supplying the wrong construction drawings, plans and specifications." ECF No. 90 at 5. According to the Woods, "Milionis was also negligent in the way that billing and invoicing was handled and for misuse of bank funds from the construction loan, and this negligence ('occurrence') caused, in part, the Woods to be unable to get bank funds from their construction loan to fund construction activities." *Id.* Cincinnati does not contend that these are ineligible occurrences or that there was no property damage, and the Court sees no need to

scrutinize that institutional determination. *See* ECF No. 97 at 2. Accordingly, the Woods have met their burden to show that coverage exists.

**B.     Property Damage**

The Court now turns to the property damage in order to trace back to the cause to determine if any exclusions or limitations apply. As examples of property damage, the Woods assert that "basement walls will need to be dismantled and steel columns inserted;" "portions of the roof that ha[ve] been installed will need to be dismantled" and then reinstalled; "structural modifications" to the west side foundation need to be made; shake roofing needs to be replaced; "the dormer roof will need to be dismantled;" and "the driveway will need to be raised." ECF No. 89-1 at 55–58. And the property was "damaged by the elements from sitting exposed as a mostly unfinished home through two winter seasons (now going on three)." ECF No. 90 at 6.

Importantly, the extensive record before the Court does not reflect any property damage resulting from excavation. Other than excavation, Milionis "performed no labor on the subject construction project," ECF No. 92-4 at 4, and subcontractors did "pretty much everything," ECF No. 89-2 at 129. In other words, any and all property damage that the Woods alleged in the underlying action was caused by—or arose from—the work of subcontractors.

## C. ICL

Consequently, the Court turns to the ICL, which explicitly notes that "insurance will not apply to any loss, claim or 'suit' for any liability or any damages *arising out of operations or completed operations* performed for [Milionis] by any independent contractors or subcontractors." ECF No. 89-1 at 25 (emphasis added). Under its plain terms, Cincinnati is not required to indemnify Milionis unless Milionis meets three explicit, unambiguous[5] conditions. ECF No. 88 at 4–5.

Here, Milionis does not dispute that it did not meet the conditions precedent—obtaining subcontractor contracts and being named as an additional insured on the subcontractors' liability policies. Thus, if Cincinnati can show actual prejudice, then it is not responsible for any "loss, claim or 'suit'" arising out of the work that subcontractors performed, which was "pretty much everything." ECF No. 89-2 at 129.

### 1. Actual and substantial prejudice

"An insurer cannot deprive an insured of the benefit of purchased coverage absent a showing that the insurer was actually prejudiced by the insured's noncompliance with conditions precedent." *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wash. 2d 789, 804 (1994); *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164

---

[5] The Court disagrees with the Woods's unsupported assertion that the ICL language is "internally inconsistent and ambiguous." ECF No. 90 at 6. The ICL is subject to only one reasonable interpretation.

ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE COVERAGE **-** 10

Wash. 2d 411, 426 (2008) (noting that the prejudice must also be substantial). "To establish actual prejudice, the insurer must demonstrate some concrete detriment, some specific advantage lost or disadvantage created, which has an identifiable prejudicial effect on the insurer's ability to evaluate, prepare or present its defenses to coverage or liability." *Unigard Ins. Co. v. Leven*, 97 Wash. App. 417, 427 (1999). Prejudice is a question of fact, and will seldom be decided as a matter of law. *Tran v. State Farm Fire & Cas. Co.*, 136 Wash. 2d 214, 228 (1998).

Here, Cincinnati argues it was prejudiced because Milionis's noncompliance with the ICL condition precedent left it with no contractual indemnification claims that it could have asserted to compel the subcontractors to contribute to Milionis's defense or settlement. ECF No. 87 at 15. Moreover, it deprived Milionis of the ability to have direct contractual rights to a defense and coverage from the subcontractors' insurers. *Id.* As a result, Cincinnati was left with no other insurers and parties to share in the costs of defending and indemnifying Milionis. *Id.* at 15–16.

In opposition, the Woods argue that because "Milionis's liability to the Woods is based on Milionis's conduct," not the terms of the ICL or the work of any subcontractors, there could have been no prejudice. ECF No. 90 at 15. The Woods are incorrect. Liability includes loss, i.e., property damage. Property damage is "the actual loss, injury, or deterioration of the property itself." *Overton*, 145 Wash. 2d at

428. Property damage is not, as the Woods seem to suggest, the overall amount of *damages*—or compensating loss—that the state court entered in the underlying action, whether it was higher or lower than the amount of actual property damage. *See generally* ECF No. 90; *id.*

This distinction removes the focus from Milionis's negligent conduct and appropriately analyzes whether any resulting loss and liability from property damage fell within the scope of the policy. *See Diamaco*, 97 Wash. App. at 337. Because the insurance policy at issue here is not a performance bond, it is of no import that the subcontractors may not have caused any property damage had Milionis properly performed. Thus, the Court rejects the Woods's unsuccessful arguments that the property damage they suffered was the sole result of Milionis's negligence, i.e., administrative failures, and that any exclusions or limitations to the policy do not apply because they do not involve damage from negligence. *See* ECF No. 90 at 6–7, 9, 14, 16, 19–20. Again, the focus falls on the property damage itself.

The Woods additionally posit that "there are disputed facts relating to any allegation of prejudice." *Id.* at 15. However, the Court is unpersuaded because they do not identify those facts or explain why they are material. Accordingly, the Court concludes that Cincinnati met its burden to show concrete and identifiable prejudice, as the underlying action has concluded and Cincinnati alone is left to pay

coverage owed under the policy. No rational jury could find otherwise. Therefore, Cincinnati is relieved of its duty to indemnify under the policy.

While the result in this case is unfortunate because the Woods could not have foreseen that entering a contract to have their dream home built would result in years of legal action and resulting damages, they are at the mercy of Milionis's general liability policy, at least in this action. And Milionis could have protected itself and any assignees by complying with the policy's conditions or by paying a larger premium to modify the policy.

The Court sees no reason to consider Cincinnati's additional arguments that the operations exclusion and repair exclusion apply to any remaining speculative property damage. Not only did the Woods never make such speculated arguments, but also, the terms of the ICL are broad enough to encompass costs to repair and replace parts of the house that were defectively constructed and structurally deficient. And this includes any damage to the unfinished house from sitting exposed to the elements, as it arose out of the subcontractors' operations.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Renewed Motion for Partial Summary Judgment Re Coverage, **ECF No. 87**, is **GRANTED**.

2. The Clerk's Office is directed to **ENTER DECLARATORY JUDGMENT** in Plaintiff's favor that Plaintiff the Cincinnati

Specialty Underwriters Insurance Company is not required to indemnify Defendant Milionis Construction, Inc. in the underlying suit.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 26th day of November 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge